

**FILED**

**October 2, 2014**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 12:05 PM**

# TENNESSEE DIVISION OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

Employee: Jane Hosford )  Docket No. 2014-05-0002
)
Employer: Red Rover Preschool )  State File No. 61799-2014

In accordance with Rule 0800-02-22-.02(6), please find attached the Workers' Compensation Appeals Board's Order and Opinion Affirming and Remanding Interlocutory Order of Court of Workers' Compensation Claims in the referenced case.

## CERTIFICATE OF SERVICE.

I hereby certify that a true and correct copy of the Order and Opinion Affirming and Remanding Interlocutory Order of Court of Workers' Compensation Claims was sent to the following recipients by the following methods of service on this the 2nd day of October, 2014.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Jane Hosford, pro se Employee | X | X | | | | 2108 Midland Road, Shelbyville, TN 37160 |
| Tamra Smith, Employer's Attorney | | | | | X | office@joemlambertlaw.com |
| Kenneth M. Switzer, Chief Judge | | | | | X | Kenneth.Switzer@tn.gov |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

Matthew Salyer

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: Matthew.Salyer@tn.gov

FILED

October 2, 2014

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 12:05 PM



## TENNESSEE DIVISION OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Employee: Jane Hosford ) | Docket No. 2014-05-0002 |
| ) | |
| Employer: Red Rover Preschool ) | State File No. 61799-2014 |
| ) | |
| ) | |
| Appeal from the Court of Workers' ) | |
| Compensation Claims ) | |
| Kenneth M. Switzer, Judge ) | |

---

**Affirmed and Remanded – Filed October 2, 2014**

---

## ORDER AND OPINION AFFIRMING AND REMANDING INTERLOCUTORY ORDER OF COURT OF WORKERS' COMPENSATION CLAIMS

This interlocutory appeal involves an employee who injured her knee when she slipped and fell while performing her duties as a teacher at a daycare on July 7, 2014. The employer claimed that the employee's injury was not compensable because (1) the employer was not the proper party to provide workers' compensation benefits, (2) the employee failed to provide timely notice of her injury, and (3) the injury did not arise primarily out of and in the course and scope of the employment. The court of workers' compensation claims found that the employer was the proper party, that notice was timely provided, and that the injury arose primarily out of and in the course and scope of the employment. Accordingly, the employer was directed to provide medical benefits, to include a panel of physicians, and to pay for medical expenses related to the employee's knee injury. The employer has appealed. Having carefully reviewed the record, we affirm the decision of the court of workers' compensation claims.

Judge Marshall L. Davidson, III, delivered the opinion of the Appeals Board, in which Judge David F. Hensley and Judge Timothy W. Conner, joined.

1

Tamra Smith, Shelbyville, Tennessee, for the employer-appellant, Red Rover Preschool

Jane Hosford, Shelbyville, Tennessee, employee-appellee, *pro se*

## Factual and Procedural Background

Jane Hosford ("Employee") is a 60-year old resident of Bedford County, Tennessee. She was employed as a teacher by Brent Stacy and Betty Stacy doing business as Red Rover Preschool ("Employer"), a daycare facility in Shelbyville, Tennessee. The daycare is owned by the Stacys. Ms. Stacy oversees the daily affairs of the business.[1]

On August 13, 2014, Employee filed a petition for benefit determination[2] seeking medical benefits. In her petition, Employee identified her job as a "lead teacher" at the daycare and claimed that she had fallen at work and twisted her right knee on July 7, 2014. On August 15, 2014, Employer filed a First Report of Injury form which was completed and signed by Ms. Stacy. In the form, Ms. Stacy identified the name of Employer as "Betty Stacy dba Red Rover Pre-school" and indicated that she "opened business [on] 7-3-2014." Further, she listed the date of Employee's injury as July 7, 2014, noted the date Employee was hired as July 14, 2014, and indicated that she was notified of Employee's injury on August 4, 2014. Ms. Stacy also noted on the form that "Employee states fell, but employer unaware of situation."

Following mediation, both parties filed requests for an expedited hearing pursuant to Tennessee Code Annotated section 50-6-239(d) (2014).[3] On September 10, 2014, the Court of Workers' Compensation Claims ("trial court") conducted an evidentiary hearing by teleconference.[4] Two witnesses testified at the hearing, Employee and Ms. Stacy.

---

[1] For the sake of clarity, Ms. Stacy and Employer are used interchangeably throughout this opinion.

[2] A petition for benefit determination "is a request for the Division to provide assistance in the resolution of any disputed issues in a workers' compensation claim. Any party may file a petition for benefit determination . . . with the Division at any time after a dispute arises in a claim for workers' compensation benefits." Tenn. Comp. R. & Regs. 0800-02-21-.02(19) (2014).

[3] An expedited hearing is a "[a] hearing to determine an issue of appropriateness of temporary disability or medical benefits prior to a hearing that results in a compensation order." Tenn. Comp. R. & Regs. 0800-02-21-.02(13) (2014).

[4] The trial court has the authority to "issue an interlocutory order either awarding or denying temporary disability or medical benefits based on a review of the documents submitted and without convening a formal hearing." Tenn. Comp. R. & Regs. 0800-02-21-.02(13) (2014). *See also* Tenn. Code Ann. § 50-6-239(d)(2) (2014). However, the trial court also has the "discretion to convene a hearing of a motion for temporary disability or medical benefits if the judge determines that convening a hearing is necessary to determine the issues presented." Tenn. Comp. R. & Regs. 0800-02-21-.02(13) (2014). In this case, the trial court chose the latter option and held a hearing.

2

Employee testified that on July 7, 2014, she was removing cots from a storage area at the daycare and fell to the floor, twisting her right knee in the process. She stated that she instantly knew something was wrong with her knee and that her assistant, Glenda Daniel, helped her up from the floor. She sought medical attention the same day and was eventually diagnosed with a meniscus tear in her right knee. Employee continued to work, though she testified that she was in pain while doing so.

Although Employee was uncertain of the exact date she informed Ms. Stacy of the fall, she believed that she did so on or about July 15, 2014. She testified that she had another conversation with Ms. Stacy about the fall the following week. Then, on or about July 29, 2014, Ms. Stacy instructed her to notify the former owners of the daycare about the fall. According to a statement given by Employee on August 16, 2014, she informed Ms. Stacy of the fall "the week of [July] 15th and week of [the] 21[st]." Employee indicated in her statement that she "told [Ms. Stacy] I was going to [the] doctor and might file workers comp" and that Ms. Daniel informed Ms. Stacy of the fall on July 7, 2014. Ms. Daniel submitted an affidavit, which was introduced as evidence at the hearing, stating that Employee fell in her presence while retrieving mats for the children in her class and that she helped Employee up. Ms. Daniel further stated in her affidavit that Employee told her that her "knee didn't feel just right" after she fell. Ms. Daniel stated in her affidavit that she then went to another room and informed Ms. Stacy that Employee had fallen.

The record also contains Employee's handwritten account, dated August 5, 2014, of what happened on July 7, 2014. In that statement, Employee recounts that while removing cots from a closet on July 7, 2014, she slipped and fell and twisted her knee and that her assistant, Ms. Daniel, was present and helped her up from the floor. Employee wrote that she immediately knew something was wrong and sought medical attention when she left work that day. She described the ensuing course of treatment as including an x-ray ordered by her personal physician, Dr. Howard Rupard, physical therapy, and an MRI conducted on August 2, 2014. According to Employee's written statement, she was informed by Dr. Rupard's office on August 4, 2014, that she had a meniscus tear in her knee. In her testimony at the hearing, Employee stated she would like to see a specialist about her knee, has health insurance but cannot use it due to the work-related nature of the injury, and "I just really want to get my leg fixed."

Ms. Stacy was the only other witness to testify at the hearing on September 10, 2014. Ms. Stacy testified that she had recently purchased the daycare from the previous owners as reflected in a sales agreement dated July 3, 2014, which identifies both Ms. Stacy and her husband, Brent Stacy, as the buyers of the business. She further testified that she has six employees and obtained workers' compensation insurance on August 5, 2014.

Ms. Stacy testified that she did not observe Employee's fall. Further, she denied that Ms. Daniel informed her of the fall. Although Ms. Stacy testified that Employee was

hired on July 14, 2014, she acknowledged that Employee was paid by her for the week of July 7th. Ms. Stacy further testified that she had no recollection of being informed by Employee of the fall until August 4, 2014. On that date, Employee sent her a text message that stated she was at a physician's office, had a meniscus tear, would need to see an orthopedic physician, and that the physician "feels like this should be filed under work men's comp." According to Ms. Stacy, this was the first time she became aware of Employee's injury. Ms. Stacy testified that she received another text message from Employee the following day, August 5, 2014, which asked her to call the "TOA group (ortho) . . . since this is work related." In response, Ms. Stacy sent a text message to Employee directing her to put in writing "everything that happened when you fell." The result was Employee's handwritten account of her injury dated August 5, 2014, referred to above.

The record also contains Employee's medical records from her visits to Dr. Rupard's office where she saw physician's assistant Byron Bloom. Mr. Bloom first saw Employee on July 7, 2014. His note from that visit indicates Employee complained of weakness and pain in her right knee and that she stated "this suddenly happened two weeks ago." Mr. Bloom ordered an x-ray, which was essentially normal, along with medication and physical therapy. Employee saw Mr. Bloom a second time on July 30, 2014, for continuing pain in her knee. An MRI was ordered, which revealed a "full-thickness cartilage defect." According to the MRI report, Employee had a "complex tear of the posterior horn of the medial meniscus." Employee saw Mr. Bloom for the final time on August 18, 2014. The note from that visit states Employee could not be referred to an orthopedic physician for "arthroscopic repair . . . due to her injury being a w/c case." On a medical certification form signed by Dr. Rupard, a handwritten note states that Employee did not indicate during the visits on July 7th and July 30th that "this was w/c," but did so when she called to get the MRI results on August 4, 2014. As acknowledged by Ms. Stacy at the hearing, this handwritten note appears to be signed by someone other than Dr. Rupard.

Following the hearing, the trial court filed an interlocutory order[5] on September 17, 2014, finding that Employer was the proper party to provide benefits, that notice of the injury was timely provided, and that the injury arose primarily out of and in the course and scope of the employment. Accordingly, the trial court directed Employer to provide medical benefits, to include a panel of physicians, and to pay medical expenses related to Employee's injury. Employer subsequently filed a timely request for an appeal on September 19, 2014. *See* Tenn. Code Ann. § 50-6-217(a)(1)(A) (2014) (a party seeking to appeal an interlocutory order awarding or denying temporary disability or medical benefits must do so by filing a request for appeal within seven business days of when the order is issued by the trial court); Tenn. Comp. R. & Regs. 0800-02-21-.02(13)

---

[5] "An interlocutory order is an order by a workers' compensation judge that awards or denies temporary disability or medical benefits following a review of the submitted material, or a hearing if one is convened at the discretion of the workers' compensation judge, as a result of a motion for expedited hearing." Tenn. Comp. R. & Regs. 0800-02-21-.02(16) (2014).

4

("An interlocutory order may be reviewed by the board of workers' compensation appeals upon timely request of a party. No other review of an interlocutory order is permitted."). On September 23, 2014, the record was received and docketed by the Clerk of the Appeals Board. For the reasons explained below, the trial court's decision is affirmed.

## Standard of Review

The standard of review to be applied by this Board in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2014). The trial court's decision must be upheld unless "the rights of the party seeking review have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

    (A) Violate constitutional or statutory provisions;
    (B) Exceed the statutory authority of the workers' compensation judge;
    (C) Do not comply with lawful procedure;
    (D) Are arbitrary, capricious, characterized by abuse of discretion, or clearly unwarranted exercise of discretion; or
    (E) Are not supported by evidence that is both substantial and material in the light of the entire record.

Tenn. Code Ann. § 50-6-217(a)(2) (2014).

In applying this standard, courts have construed substantial and material evidence to mean "such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Clay County Manor, Inc. v. State of Tennessee*, 849 S.W.2d 755, 759 (Tenn. 1993)( *quoting Southern Railway Co. v. State Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984)). Like other courts applying the standard embodied in section 50-6-217(a)(2), we will not disturb the decision of the trial court absent the limited circumstances identified in the statute.

## Analysis

### A. Proper party

Employer claimed in the trial court that the former owners of the daycare were responsible for Employee's injury based upon (1) the timing of Employer taking ownership of the business, (2) the injury taking place two weeks before July 7, 2014 as suggested in Employee's medical records, and (3) Employee not being hired until July 14, 2014. The trial court was unpersuaded, concluding that Employer was the proper party to provide benefits. We agree.

5

Ms. Stacy testified that Employee was not hired until July 14, 2014, and that she did not receive her license to operate the daycare until July 15, 2014. In support of her testimony, a "new employee orientation" form was introduced as evidence showing Employee's "date of hire" as July 14, 2014, though the same form reflects an orientation date of June 11, 2014. However, Ms. Stacy also testified that she, not the former owners, paid Employee for her work the week of July 7th and, according to the First Report of Injury form Ms. Stacy executed, she began operating the daycare on July 3, 2014. Moreover, a wage statement contained in the record reflects that Employee's first day of work was July 7, 2014. Ms. Stacy also admitted to having six employees, a key requirement to satisfy the definition of employer as found in Tennessee Code Annotated section 50-6-102(12).[6]

Furthermore, the sales agreement between the Stacys and the former owners of the daycare dated July 3, 2014, expressly provides that the Stacys "shall be responsible for all accounts, expenses, payables, and *claims of any kind* incurred after the date of transfer [July 3, 2014] . . . not limited to payroll, supplies, utilities and all taxes and *claims of any kind* related to operations under Buyer's ownership after that date." (Emphasis added.) The import of this plain and unambiguous contractual language is clear – the Stacys owned the business when Employee fell on July 7, 2014. Similarly, Ms. Stacy's testimony that she paid Employee for the week of July 7th undermines any suggestion that Employee was not working for Employer on the date she fell.

In short, the evidence does not preponderate against the trial court's resolution of this issue.

## B. Notice

Employer maintained in the trial court that an award of benefits was improper because Employee failed to provide timely notice of her injury as required by Tennessee Code Annotated section 50-6-201. The trial court found otherwise, concluding that the notice requirement was satisfied. The trial court explained that "[i]n light of the Court's finding . . . that Employee sustained an injury at work on July 7, 2014, by Employer's own admission she learned of the injury no later than August 4, 2014, within the statutory 30-day timeframe." Accordingly, the trial court rejected Employer's lack of notice defense. Based upon our review of the record, we find no error with the trial court's resolution of this issue.

---

[6] An employer "includes any individual, firm, association or corporation . . . using the services of not less than five (5) persons for pay." Tenn. Code Ann. § 50-6-102(12) (2014). Also, "[i]f the employer is insured, it shall include the employer's insurer." *Id.* No contention has been made that the Stacys do not fit this definition of employer.

The controlling statute, Tennessee Code Annotated section 50-6-201, provides in pertinent part:

(a)(1) Every injured employee or the injured employee's representative shall, immediately upon the occurrence of an injury, or as soon thereafter as is reasonable and practicable, give or cause to be given to the employer who has no actual notice, written notice of the injury, and the employee shall not be entitled to physician's fees or to any compensation that may have accrued under this chapter, from the date of the accident to the giving of notice, unless it can be shown that the employer had actual knowledge of the accident. No compensation shall be payable under this chapter, unless the written notice is given to the employer within thirty (30) days after the occurrence of the accident, unless reasonable excuse for failure to give the notice is made to the satisfaction of the tribunal to which the claim for compensation may be presented.

(2) The notice of the occurrence of an accident by the employee required to be given to the employer shall state in plain and simple language the name and address of the employee and the time, place, nature, and cause of the accident resulting in injury or death. The notice shall be signed by the claimant or by some person authorized to sign on the claimant's behalf, or by any one (1) or more of the claimant's dependents if the accident resulted in death to the employee.

(3) No defect or inaccuracy in the notice shall be a bar to compensation, unless the employer can show, to the satisfaction of the workers' compensation judge before which the matter is pending, that the employer was prejudiced by the failure to give the proper notice, and then only to the extent of the prejudice.

(4) The notice shall be given personally to the employer or to the employer's agent or agents having charge of the business at which the injury was sustained by the employee.

The notice requirement contained in section 50-6-201 "exists so that an employer will have an opportunity to make a timely investigation of the facts while still readily accessible, and to enable the employer to provide timely and proper treatment for an injured employee." *Jones v. Sterling Last Corp.*, 962 S.W.2d 469, 471 (Tenn. 1998). Consequently, "the giving of statutory notice to the employer is an absolute prerequisite to the right of an employee to recover compensation under the workers' compensation law." *Bogus v. Manpower Temp. Serv.*, 823 S.W.2d 544, 546 (Tenn. 1992). When lack of notice is raised as a defense, the burden is on the employee to show that notice was

given, the employer had actual notice, or the failure to give notice was reasonable under the circumstances. Tenn. Code Ann. § 50-6-201(a)(1) (2014); *Jones*, 962 S.W.2d at 472.

Turning to the trial court's ruling on this issue, Employee testified that while uncertain of the exact date she told Ms. Stacy of the fall, she believed it was on or about July 15, 2014. She testified that she had another conversation with Ms. Stacy about the fall the following week. Thereafter, on or about July 29, 2014, Ms. Stacy instructed her to notify the former owners of the daycare about the fall. Moreover, according to Employee's statement given on August 16, 2014, she informed Ms. Stacy of the fall "the week of [July] 15th and week of [the] 21[st]." Employee further indicated in her statement that she "told [Ms. Stacy] I was going to [the] doctor and might file workers comp." Employee's statement also reflects that Ms. Daniel informed Ms. Stacy of the fall on July 7, 2014. Consistent with Employee's statement, Ms. Daniel indicated in her affidavit that she informed Ms. Stacy of the fall on the day it happened.

In addition, the First Report of Injury form Ms. Stacy signed indicates that she was notified of Employee's injury on August 4, 2014. Although Ms. Stacy testified that she had no recollection of being informed by anyone of the fall prior to August 4, 2014, she readily acknowledged Employee sent her a text message on that date stating that she was at a physician's office, had a meniscus tear, would need to see an orthopedic physician, and that "he feels like this should be filed under work men's comp." It is undisputed that Ms. Stacy received another text message from Employee the following day, August 5, 2014, asking her to call the "TOA group (ortho) . . . since this is work related." Ms. Stacy's testimony alone establishes that she received notice of the injury within the thirty days provided for in section 50-6-201. This issue has no merit.

### C. Arising primarily out of and in the course and scope of employment

Employer does not dispute the existence of Employee's knee injury. Rather, Employer challenges whether Employee actually fell at work on July 7, 2014, contending that the medical records indicate the fall occurred two weeks prior to that date. Employer also points out that there is no indication in the medical records that Employee informed her physician that the fall took place at the daycare. Therefore, Employer argues that the injury is not compensable as arising primarily out of and in the course and scope of employment.

To be compensable under the workers' compensation statutes, an injury must arise primarily out of and occur in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(13) (2014). An injury means "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." *Id.* For an injury to be accidental, it must be "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence, and

8

shall not include the aggravation of a preexisting disease, condition or ailment unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(13)(A) (2014).

An injury is deemed to arise primarily out of and in the course and scope of employment "only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(13)(B) (2014). Further, "[a]n injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(13)(C) (2014). An injury is shown to a reasonable degree of medical certainty if "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(13)(D) (2014). "The opinion of the treating physician, selected by the employee from the employer's designated panel of physicians . . . shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(13)(E) (2014). The employee bears the "burden of proving each and every element of the claim by a preponderance of the evidence." Tenn. Code Ann. § 50-6-239(c)(6) (2014).

Traditionally, courts have held that the statutory requirements that an injury arise out of and in the course of the employment are not synonymous "although both elements exist to ensure a work connection to the injury for which the employee seeks benefits." *Blankenship v. Am. Ordnance Sys.*, 164 S.W.3d 350, 354 (Tenn. 2005). An injury occurs in the course of employment if it takes place while the employee was performing a duty he or she was employed to perform. *Fink v. Caudle*, 856 S.W.2d 952, 958 (Tenn. Workers' Comp. Panel 1993). Thus, the course of employment requirement focuses on the time, place, and circumstances of the injury. *Saylor v. Lakeway Trucking, Inc.*, 181 S.W.3d 314, 318 (Tenn. 2005).

In contrast, arising out of employment refers to causation. *Reeser v. Yellow Freight Sys., Inc.*, 938 S.W.2d 690, 692 (Tenn. 1997). An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005). Put another way, the element of causation is satisfied when the "injury has a rational, causal connection to the work." *Braden v. Sears, Roebuck & Co.*, 833 S.W.2d 496, 498 (Tenn. 1992). The mere presence of the employee at the place of injury because of the employment is not enough, as the injury must result from a hazard peculiar to the work or be caused by a risk inherent in the nature of the work. *Blankenship*, 164 S.W.3d at 354. Accordingly, "an injury purely coincidental, or contemporaneous, or collateral, with the employment . . . will not cause

the injury . . . to be considered as arising out of the employment." *Jackson v. Clark & Fay, Inc.,* 270 S.W.2d 389, 390 (Tenn. 1954).

Applying these principles to this case, we conclude that the evidence does not preponderate against the trial court's finding that Employee sustained an injury on July 7, 2014, that arose primarily out of and in the course and scope of her employment with Employer. Employee testified that while at work at the daycare on July 7, 2014, she slipped removing cots from a storage area and twisted her right knee before falling to the floor. Her testimony is consistent with the handwritten account she gave dated August 5, 2014. According to that statement, Employee immediately knew something was wrong with her knee after she had fallen and her assistant, Ms. Daniel, was present and helped her up. Employee's account of what occurred was corroborated by Ms. Daniel who, in her affidavit, stated that Employee fell in her presence while she was retrieving mats for the children in her class and that she helped Employee off the floor. Ms. Daniel also stated in her affidavit that Employee told her that her "knee didn't feel just right" and that Ms. Daniel urged her to seek medical attention. Employee sought medical treatment the same day and was later diagnosed with a meniscus tear. According to Employee's statement of August 16, 2014, she had no injuries prior to July 7, 2014. No contrary evidence was presented.

Employer claims that Employee's version of events is not believable for two reasons. First, Employer points to the July 7, 2014 medical note from Dr. Rupard's office indicating that Employee "states that her knee is weak and that this suddenly happened two weeks ago." Employee denies making this statement. But even assuming she did, it would mean little because stating that her knee became weak two weeks earlier is distinctly different from stating that she fell or otherwise injured her knee two weeks earlier. Moreover, Employer offered no evidence from either Dr. Rupard or Mr. Bloom suggesting a specific injury two weeks earlier.

Second, Employer attempts to discredit Employee's testimony by pointing to an affidavit of Sandra Taylor, who apparently was either a co-worker or supervisor of Employee in 2012 or 2013. According to Ms. Taylor's affidavit, Employee complained about certain aspects of her job, namely mopping and taking out trash, once in 2012 and again in 2013, and threatened to pursue workers' compensation benefits if she got hurt. Ms. Taylor's affidavit, however, does nothing to contradict Employee's evidence that she fell while performing her job on July 7, 2014, injuring her knee.

In short, the evidence does not preponderate against the trial court's finding that Employee sustained an injury on July 7, 2014, that arose primarily out of and in the course and scope of her employment. It follows that Employer must provide medical benefits as determined by the trial court. The law is clear that "[t]he employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical

10

treatment . . . made reasonably necessary by accident as defined in this chapter." Tenn. Code Ann. § 50-6-204(a)(1)(A) (2014). Moreover, "the employer shall designate a group of three (3) or more independent reputable physicians, surgeons, chiropractors or specialty practice groups . . . from which the injured employee shall select one (1) to be the treating physician." Tenn. Code Ann. § 50-6-204(3)(A)(i) (2014). Accordingly, Employer must provide a panel of physicians from which Employee must select a treating physician. In addition, Employer must pay reasonable and necessary expenses related to Employee's work-related knee injury.

## D. Credibility determinations

The trial judge in this case elected to record the telephonic hearing during which the parties testified. Under most circumstances, given the time limits as set forth in Tennessee Code Annotated section 50-6-217(a)(1)(A), it is not feasible for the parties to obtain and provide a transcript or statement of the evidence for consideration on appeal, though nothing prohibits them from doing so.[7] Accordingly, when an evidentiary hearing is recorded, as in this case, the audio recording of the proceeding included in the record on appeal will be reviewed in an effort to promote meaningful appellate review and, in turn, public confidence in the integrity and fairness of the process. As one court has explained, "[f]ull appellate consideration of a trial court's determination . . . is part of the process designed to achieve an accurate and just decision." *In re Adoption of J.D.W.*, No. M2000-00151-COA-R3-CV, 2000 Tenn. App. LEXIS 546, at *12 (Tenn. Ct. App. Aug. 16, 2000).

In this case, the trial court found Employee to be a credible witness based upon what the trial court heard during the telephonic hearing. Ordinarily, such a finding would be entitled to deference on appeal, even though the testimony was taken telephonically. *Kelly v. Kelly,* __ S.W.3d __, 2014 Tenn. LEXIS 664, at *21 (Tenn. 2014). The well-settled rule is that

> [w]hen it comes to live, in-court witnesses, appellate courts should afford trial courts considerable deference when reviewing issues that hinge on the witnesses' credibility because trial courts are uniquely positioned to observe the demeanor and conduct of witnesses. [A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary.

---

[7] "Upon receipt of a request for appeal of an interlocutory order, the clerk shall assemble the record from the judge and submit the appeal to the board of appeals for review. No transcript is required to be filed. Within seven (7) business days of the date the appeal is submitted to the board by the clerk, the board shall review the record and enter an opinion affirming or reversing the decision of the judge." Tenn. Comp. R. & Regs. 0800-02-22-.01(3) (2014).

11

On the other hand, appellate courts are not required to give similar deference to a trial court's findings of fact based on documentary evidence such as depositions, transcripts, or video recordings. When findings are based on documentary evidence, an appellate court's ability to assess credibility and to weigh the evidence is the same as the trial court's. Accordingly, when factual findings are based on documentary evidence, an appellate court may draw its own conclusions with regard to the weight and credibility to be afforded that documentary evidence.

*Id.* at *15-16 (internal citations and quotation marks omitted).

Although live testimony is preferred over remote testimony for a number of legitimate reasons,[8] the Tennessee Supreme Court has declared that telephonic testimony is more akin to live testimony than to documentary evidence and, therefore, appellate courts should afford trial courts considerable deference when reviewing issues that hinge on a witness's credibility. *Id.* at *20. However, when the hearing is recorded as it was in this case and the recording is part of the record on appeal, this Board is in the same position as the trial court to assess a witness's credibility. Accordingly, when the record contains an audio recording of the proceedings, we need not give deference to the trial court's assessment of credibility, just as we would not do so if the trial court's findings were based on documentary evidence alone.

Here, the trial court observed that "Employee gave the Court no reason to doubt her credibility." The trial court explained that it "considered all the suggested characteristics for telephonic testimony outlined in Kelly. Notably, Employee's tone and inflection were calm, at ease, self-assured, steady, confident and reasonable. She answered all questions without hesitation. In addition, she was forthcoming." We have listened to the parties' testimony and conclude that the evidence does not preponderate against the trial court's credibility determinations.

## Conclusion

For the foregoing reasons, we hold that the evidence does not preponderate against the trial court's findings that Employer was the proper party to provide benefits, that notice of the injury was timely provided, and that the injury arose primarily out of and in

---

[8] A "witness's personal appearance in court (1) assists the trier of fact in evaluating the witness's credibility by allowing his or her demeanor to be observed first-hand; (2) helps establish the identity of the witness; (3) impresses upon the witness the seriousness of the occasion; (4) assures that the witness is not being coached or influenced during testimony; (5) assures that the witness is not referring to documents improperly; and (6) in cases where required, provides for the right of confrontation of witnesses." *Kelly*, __ S.W.3d at __, 2014 Tenn. LEXIS 664, at *18.

the course and scope of the employment. Nor did the trial court err in directing Employer to provide medical benefits. Further, we find that the trial court's decision does not run afoul of any of the standards identified in Tennessee Code Annotated section 50-6-217(a)(2). Accordingly, the trial court's decision is affirmed and the case is remanded for any further proceedings which may be necessary.

**Marshall L. Davidson, III, Judge**
**Workers' Compensation Appeals Board**